# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PLASMACAM, INC. | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00037 |
| | § | Judge Mazzant |
| CNCELECTRONICS, LLC, FOURHILLS | § | |
| DESIGNS, LLC, THOMAS LEE | § | |
| CAUDLE, AND MARTHA JANE | § | |
| CAUDLE | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are competing motions to enforce settlement: (1) Defendants' Motion to Enforce Settlement (Dkt. #56); and (2) Plaintiff's Motion to Enforce Settlement or, Alternatively, to Determine that No Settlement Was Reached (Dkt. #57). After reviewing the motions and the relevant pleadings—and holding a status conference on June 5, 2020 regarding these motions—the Court finds that: (1) Defendants' Motion to Enforce Settlement (Dkt. #56) should be denied; and (2) Plaintiff's Motion to Enforce Settlement or, Alternatively, to Determine that No Settlement Was Reached should be granted (Dkt. #57).

## BACKGROUND

On December 23, 2019, counsel for Plaintiff PlasmaCAM, INC. notified the Court via telephone that the parties reached a settlement. That same day, the Court ordered the parties to file all papers necessary for the closing of this case by January 23, 2020 (Dkt. #50).

On January 23, 2020, the parties filed a Joint Notice of Non-Settlement and Request for Telephonic Conference (Dkt. #51). In their notice, the parties indicated that "despite their best efforts, they have been unable to finalize and execute a written settlement agreement. Specifically, the parties have a dispute regarding the scope of the mutual release" (Dkt. #51). The parties also requested a telephone conference with the Court, which the Court held on February 7, 2020.

After hearing the parties' dispute during the telephone conference, the Court directed the parties to file any motions to enforce the settlement agreement by February 21, 2020. Defendants filed their Motion to Enforce Settlement on February 21, 2020 (Dkt. #56). Plaintiff responded on March 9, 2020 (Dkt. #60). Defendants filed their reply on March 16, 2020 (Dkt. #63).

On February 24, 2020, Plaintiff filed its Motion to Enforce Settlement or, Alternatively, to Determine that No Settlement Was Reached (Dkt. #57).[1] Defendants responded on March 9, 2020 (Dkt. #61). Defendants noted in their response that "the parties appear to agree" on the scope of the settlement's mutual release (Dkt. #61 at p. 2). Defendants also stated that they "do not take issue with [Plaintiff's] construction of 'mutual release'" (Dkt. #61 at p. 3).

Plaintiff filed its reply in support of its motion on March 16, 2020 (Dkt. #62). In Plaintiff's reply, Plaintiff indicated that "it appears Defendants have finally come around to the position advocated by [Plaintiff] all along" (Dkt. #62 at p. 1). And Plaintiff also noticed that "[b]ased on Defendants' Response [(Dkt. #61)], it is now unclear where the parties disagree" (Dkt. #62 at p. 2). The Court was also confused as to what was still in dispute, and so it scheduled a status conference to discuss whether there was any remaining disagreement (Dkt. #64).

During the June 5, 2020 status conference, the Court pointed out that it looked like a settlement had been reached and noticed the apparent agreement on the dispute regarding the scope of the mutual release. The parties did not express any disagreement with the Court's characterization. At the end of the conference, the Court gave the parties two weeks to resolve the issue on their own. That two weeks has passed, and the parties have notified the Court that they are still unable to reach a resolution (Dkt. #65).

---

[1] Though Defendants do not ask the Court to strike Plaintiff's motion as untimely, the Court notes that Plaintiff filed its motion after the February 21 deadline provided by the Court.

## ANALYSIS

This "dispute" clumsily tiptoes on the line separating frivolous matters from those that deserve the Court's time and attention. The parties acknowledged that they had "a dispute regarding the scope of the [settlement agreement's] mutual release" (Dkt. #51). Fair enough. Disputes of this nature happen, and the Court is here to resolve legitimate disputes. But after filing competing briefs to enforce the settlement agreement, the parties ended up realizing that there was no longer a dispute regarding the scope of the settlement's mutual release. And yet the parties have notified the Court that they still cannot reach a resolution (Dkt. #65).

As the Court and the parties both addressed during the June 5 status conference, any initial disagreement between the parties on the scope of the settlement agreement's mutual release has evaporated. As detailed in the background section of this Order, Defendants have acknowledged both that "the parties appear to agree" on the proper understanding of the settlement's mutual release (Dkt. #61 at p. 2). Indeed, Defendants' own articulation of the settlement's terms are identical to Plaintiff's in every material way.

Defendants claim that "the parties agreed to a simple 'mutual release' (that would be equally applicable to all claims that could have been brought in the lawsuit), as well as a 'covenant not to sue' (that would be applicable to future claims, but limited to claims for infringement of the [']441 patent)" (Dkt. #61 at p. 4). Likewise, Plaintiff "understood that the mutual release would release the claims relating to or arising out of the present lawsuit, specifically as they related to the infringing products and the [']441] patent-in-suit" (Dkt. #57 at p. 4). And Plaintiff agrees that "the mutual release extends to claims that were brought or should have been brought in the litigation (the equivalent of 'arising out of or relating to the Litigation') and that the prospective term only applies to the patent at issue" (Dkt. #62 at p. 2).

As Plaintiff aptly concludes, "the parties' objective intent was expressed in" Plaintiff's Motion to Enforce (Dkt. #62 at p. 3). Defendants did not meaningfully contest that in their response to Plaintiff's motion or at the June 5 status conference. The Court is at a loss for what dispute remains for it to resolve. Accordingly, the Court grants Plaintiff's motion to enforce settlement.

## CONCLUSION

It is therefore **ORDERED** that: (1) Defendants' Motion to Enforce Settlement (Dkt. #56) is hereby **DENIED**; and (2) Plaintiff's Motion to Enforce Settlement or, Alternatively, to Determine that No Settlement Was Reached (Dkt. #57) is hereby **GRANTED**.

Accordingly, the Court finds that the parties' objective understanding of the disputed settlement terms, as articulated in Plaintiff's reply to its motion, is as follows:

> 2. **Covered Products**. For purposes of this Agreement, the term "Covered Products" shall mean (1) all components previously or currently manufactured, sold or offered for sale by CNC which incorporate digital torch height control; and (2) updates and bug fixes to the currently manufactured products.
>
> . . .
>
> 7. **Mutual Release**. Subject to PlasmaCAM's timely receipt of the Settlement Payment, the Parties each hereby release the other Party and their respective officers, agents, servants, employees, and attorneys from any and all actions, judgments, indebtedness, damages, losses, claims, demands, costs, expenses, attorney fees and liabilities, whether known or unknown, that were brought or should have been brought, arising out of or relating to the Litigation.
>
> 8. **Covenant Not to Sue**. Subject to PlasmaCAM's timely receipt of the Settlement Payment, PlasmaCAM, on behalf of itself and its licensor, hereby covenants not to sue CNC or any of CNC's distributors, customers, suppliers, or end users for any infringement of the Patent that arises from the making, use, sale, offer for sale, import, or export of any Covered Products.

(Dkt. #62 at p. 3).

**IT IS SO ORDERED**.

**SIGNED this 22nd day of June, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE